CANFIELD v. CANFIELD.

(Supreme Court, Special Term, Erie County. January 30, 1909.)

CONTRACTS (§ 16*)—OFFER AND ACCEPTANCE—SUPPORT OF PARENT—CONSIDERATION.

   Code Cr. Proc. § 914, provides that, if a poor person is unable by work to maintain himself, his children, if able to do so, must maintain him in a manner to be approved by the overseers of the poor. Plaintiff, who leased a farm, had supported his father, a man over 80 years of age, without property and unable to support himself, whereupon in 1904 defendant. who was plaintiff's brother, in answer to a statement by his mother in plaintiff's presence that plaintiff thought defendant should help care for the father, stated, "Commencing this year, I will pay 50 cents a week for father's support to L. on the rent," referring to plaintiff's landlord. Defendant paid $25 to L. on plaintiff's rent, and then refused to pay more. *Held* that, defendant being under a legal obligation to support his father, his offer of contribution made in plaintiff's presence constituted an enforceable contract based on sufficient consideration.

   [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 16:*]

Appeal from Municipal Court of Buffalo.

Action by Hyatt Canfield against Valda M. Canfield. From a judgment of nonsuit, plaintiff appeals. Reversed, and new trial granted.

W. W. Hammond, for appellant.
Wilbur E. Haupt, for respondent.

WHEELER, J. The record returned by the Municipal Court shows the following facts:

The plaintiff and defendant are brothers, and sons of Milo Canfield, a man over 80 years of age, having no property and unable to support himself. The father was living with the plaintiff on the plaintiff's leased farm and being supported by the plaintiff. Differences had arisen between the brothers, and they were not on speak-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing terms. One day, early in 1904, the plaintiff testifies his brother was at his house; that his mother, the plaintiff, and the defendant were together in the room, when the following conversation took place between the defendant and their mother:

"Q. What was said? A. Well, I'll tell you; mother was in the room, and I was in the room, and the defendant was in the room, and she said to him like this: 'Valda, Hyatt thinks you should help take care of your father. He is as much your father as his, and it isn't fair for him to do it all alone.' He scratched his head, and looked at the floor, and he said: 'Commencing this year. I'll pay 50 cents a week for father's support, and pay it to Miss Leslie on the rent.' That is what he said. * * * I said—I don't know whether I said it to him or mother—I said: 'It isn't much, but it is better than nothing.'"

The Miss Leslie referred to was the owner of the farm where the plaintiff lived, and to whom he paid rent. It appears by further evidence in the case that some time subsequent to the conversation the defendant did call on Miss Leslie and paid $25 to apply on the rent due her from the plaintiff. The Municipal Court granted the defendant's motion for a nonsuit, from which judgment the plaintiff has appealed to this court.

We are of the opinion that the court below erred in thus disposing of this case. The promise made by the defendant to contribute was, in our opinion, in effect made directly to the plaintiff. The nonsuit appears to have been granted on the theory that the promise was not made to the plaintiff, but to the plaintiff's mother; but we take a different view of the transaction as presented by the testimony. At the talk in question the plaintiff was present. It was true the mother was the one to address the defendant, but she asked nothing for herself. She did not assume to represent herself, or to request anything for her own benefit, but stated that the plaintiff thought the defendant should contribute to his father's maintenance. It appears that at this time the father was living with the plaintiff and being supported by him; and, when the mother said to the defendant that the plaintiff thought that he "ought to pay him something for your father's support," it seems quite clear to us that the mother was speaking for and in behalf of the plaintiff. The defendant could have understood nothing else; and, when the defendant promised to pay 50 cents a week to the father's support, the promise was not made to the mother, but in law and in fact it was a promise to the plaintiff. What was subsequently said and done fully sustains this view, because the mother at once turned to the plaintiff and said, "You hear what he says," to which the plaintiff replied, "It isn't much, but it is better than nothing."

It makes no difference in this case how the money was to be paid. The promise was to pay the money to Miss Leslie, the plaintiff's landlord, to be applied on the rental of the farm leased by the plaintiff. The method of payment is of no consequence, so long as the promise to pay was made. It appears by the evidence of Miss Leslie that the defendant in part kept the agreement, and did, in fact, pay to her for the plaintiff's benefit $25, a fact which strongly corroborates the plaintiff's version of the arrangement between them. This promise was a valid and binding agreement, and supported by a

good and sufficient consideration. The plaintiff and the defendant were under legal obligations to support their father. Section 914 of the Code of Criminal Procedure provides:

"Section 914. Who may be Compelled to Support Poor Relatives. The father, mother and children, if of sufficient ability, of a poor person who is insane, blind, old, lame, impotent or decrepit, so as to be unable by work to maintain himself, must at their own charge, relieve and maintain him in a manner to be approved by the overseers of the poor of the town where he is, or in the city of New York, by the commissioners of public charities."

This statute imposes the obligation which may be met by the sons in such way as they may mutually agree upon. It might have been met by providing for the father's support by having him live with some third party, or they might agree, as was done here, to the father's continuing to live with the plaintiff and the defendant bearing a part of the cost. The actual support of the father by the plaintiff was sufficient consideration for the promise to contribute toward it. All the elements of a good and valid contract, in our opinion, were present.

The judgment of nonsuit must be reversed, and a new trial granted, such trial to be had in the Municipal Court on February 16, 1909, with costs of this appeal to abide the event of the action. So ordered.